**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DALE OLIN and STACY SMITH, | ) | Case No. 1:20-cv-02523-RDB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN A. PLANK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
CONSOLIDATE ALL RELATED STOCKHOLDER DERIVATIVE ACTIONS**

The defendants in the above-captioned action and Nominal Defendant Under Armour, Inc. ("Under Armour" or the "Company"), respectfully submit this memorandum of law in support of their motion to consolidate the above-captioned action with *Andersen, et al. v. Plank, et al.*, Case No. 18-cv-2239-RDB (D. Md.) and *Viskovich v. Plank, et al.*, Case No. 20-cv-3390-RDB (D. Md.).[1]

## PRELIMINARY STATEMENT

The above-captioned action and the *Andersen* and *Viskovich* actions are tag-along stockholder derivative lawsuits based on the same subject matter and factual allegations that have been raised by other plaintiffs in a consolidated securities class action currently pending before this Court (the "Securities Class Action"). These cases (along with four derivative cases pending in Maryland state court) all seek to recast the fraud allegations against the Company in the Securities Class Action as breach of fiduciary duty claims on behalf of the Company, and all purport to pursue relief that will ultimately go to the Company. The Court has already consolidated two of these cases (into the *Olin* action), and Defendants now seek further consolidation of all of the related derivative actions pending in this Court into one case in order

---

[1] Under Armour and the defendants in the actions captioned *Andersen v. Plank*, No. 18-cv-2239-RDB (D. Md.), *Viskovich v. Plank*, No. 20-cv-3390-RDB (D. Md.), and *Olin, et al. v. Plank, et al.*, No. 20-cv-2523-RDB (D. Md.), have filed substantively identical motions and supporting papers in all three cases, all of which seek consolidation of *Olin* with *Andersen* and *Viskovich*. Accordingly, and for the sake of simplicity, the signature blocks below reflect the names of all individuals named as defendants in any of these actions, and those individuals, together with Under Armour, are referred to herein as the "Defendants." Unless otherwise noted, references to "ECF No. __" are to documents on the docket of the *Andersen* action. References to "Groner Decl. Ex __" are to the exhibits to the Declaration of Samuel P. Groner, dated January 21, 2021, filed herewith. Unless otherwise noted, emphasis is added and internal citations are omitted throughout.

to promote efficiency and reduce the risk that the Company's resources will be expended litigating the same issues in multiple cases nominally brought on its behalf.

By their motion, the plaintiffs in two of these cases, *Andersen* and *Viskovich*, have moved to consolidate their cases.  ECF No. 35.  Defendants do not oppose consolidation of *Andersen* and *Viskovich* but also seek consolidation of the third substantially similar case, *Olin*, with the *Andersen* and *Viskovich* cases.[2]

Consolidation of all of these cases is appropriate because they all contain substantially similar factual allegations, assert several of the same causes of action, and name many of the same defendants.  More specifically, all three cases allege that current and former Under Armour directors and officers "breached their fiduciary duties by manipulating the Company's reported financial results to overstate demand, and trend in demand, for its products."  ECF No. 35-1 at 2; Verified Stockholder Derivative Complaint ¶¶ 2-21, *Olin*, No. 20-cv-02523-RDB (D. Md. Sept. 1, 2020), ECF No. 1 ("Olin Complaint").  This significant overlap is the same basis upon which the *Andersen* and *Viskovich* plaintiffs seek consolidation of their actions.  ECF No. 35-1 at 5-7.

Although the plaintiffs in *Andersen* and *Viskovich* cannot and do not dispute that their cases will overlap significantly with *Olin*, they assert that their cases should not be consolidated with *Olin* because they both made litigation demands on Under Armour's Board of Directors (the "Board") before filing suit, while the plaintiffs in *Olin* did not do so.  *Id.* at 1-2 & n.1.  They claim that there are "differing threshold issues" between "demand made" cases (like *Andersen* and *Viskovich*) and "demand futility" cases (like *Olin*).  *Id.*  But this procedural distinction is a red herring.  Rather than preclude consolidation, it actually supports consolidation: whether demand futility or demand refused, the central issue will be the independence of the Board.

---

[2] Defendants take no position on the request to appoint a leadership structure for the plaintiffs.

2

Under Maryland law (which applies in all of these cases), the primary threshold issue in demand futility cases—the Board's independence—may also be challenged by plaintiffs that have made a demand on a corporate board that has been refused. *See Boland v. Boland*, 423 Md. 296, 331 n.25 (2011). Here, just as the *Olin* plaintiffs challenge the Board's independence in support of their claims that demand was excused (Olin Complaint ¶¶ 107-41), the *Andersen* and *Viskovich* plaintiffs challenge the Board's independence in support of their respective claims that their demands were wrongfully refused (ECF No. 1 ¶¶ 264-67; Verified Stockholder Derivative Complaint ¶¶ 102-14, *Viskovich*, ECF No. 1 (D. Md. Nov. 20, 2020) ("Viskovich Complaint")).

Because *Andersen*, *Viskovich* and *Olin* will present substantially similar factual and legal issues, consolidation will preserve the Court's and the parties' resources by eliminating the need to litigate the same issues two times in separate actions. Defendants therefore request consolidation of all of these actions into a single action.

## BACKGROUND

Under Armour is a leading developer, marketer, and distributor of performance apparel, footwear, and accessories. Since its initial public offering in 2005, the Company achieved tremendous success, including 26 consecutive quarters with greater than 20% net revenue growth between 2010 and 2016. In the fourth quarter of 2016, however, Under Armour experienced "only" 12% net revenue growth. The Securities Class Action was filed in this Court in February 2017, days after the Company issued its 2016 results. The current complaint in that action challenges, among other things, the Company's disclosures between 2015 and 2019 regarding its financial performance, demand for its products, and its sales and accounting practices. *See* Consolidated Third Amended Complaint for Violations of the Federal Securities laws, *In re Under Armour Sec. Litig.*, No. 17-cv-388-RDB (D. Md. Feb. 10, 2017), ECF No. 153.

Since the Securities Class Action was first filed, several purported Company stockholders have sent litigation demands or filed stockholder derivative litigation (or both) asserting breach of fiduciary duty claims challenging many of the same disclosures at issue in the Securities Class Action, including the *Andersen*, *Viskovich*, and *Olin* cases presently before this Court.[3] The *Andersen*, *Viskovich*, and *Olin* cases each seek to recover damages based, at least in part, on losses to the Company (if any) sustained in connection with the Securities Class Action. ECF No. 1 ¶ 243; Viskovich Complaint ¶ 88; Olin Complaint ¶ 101.

A.  **The *Andersen* Action**

On July 23, 2018, plaintiff Balraj Paul filed the *Andersen* action in this Court, asserting derivative breach of fiduciary duty claims against several of the Company's current and former directors and executives.[4] Mr. Paul's complaint alleges, among other things, that the defendants caused or permitted the Company to issue supposedly misleading statements and omissions regarding its performance and demand for its apparel products. ECF No. 1 ¶¶ 5-6, 274-78. In deference to the Securities Class Action, the *Andersen* case has been stayed since December 2018 pursuant to a series of Court-ordered stipulations, and the defendants have not filed any responsive pleadings.

Prior to filing the *Andersen* case, Mr. Paul (together with Mr. Andersen) sent a letter to the Board, dated July 5, 2017, demanding that the Board investigate and pursue claims similar to those asserted in his complaint (the "First Paul Demand"). ECF No. 1 ¶ 17; ECF No. 35-1 at 3. In accordance with Maryland law, the Board delegated authority to a review committee of two

---

[3] Neither the plaintiffs nor Defendants seek consolidation of the *Andersen*, *Viskovich*, and *Olin* derivative cases with the Securities Class Action.

[4] Mr. Paul filed the *Andersen* case with Brock Andersen, another purported Under Armour stockholder. According to Mr. Paul, Mr. Andersen sold his Under Armour stock and no longer has standing to pursue claims derivatively on behalf of Under Armour. ECF No. 35-1 at 3 n.3.

independent and disinterested directors to review the allegations in the First Paul Demand and recommend a course of action to the Board. ECF No. 1, Ex. F. Following an investigation conducted with the assistance of independent counsel, the committee determined that there was no evidence of any misconduct, issued a report to the Board with its assessment of the potential claims, and recommended that the Board decline to pursue the potential claims asserted in the First Paul Demand. *Id.* The Board thereafter voted to adopt the findings and recommendations in the committee's report. *Id.*

On December 30, 2019 (during the pendency of the stay in *Andersen*), Mr. Paul sent a second demand letter to the Board (the "Second Paul Demand"), requesting that the Board investigate and take legal action in connection with alleged misstatements and omissions beginning in August 2016 regarding the Company's performance, demand for the Company's products, and its sales and accounting practices. ECF No. 35-1 at 4. The Second Paul Demand asserted new allegations challenging the Company's use of pull forward sales practices and its alleged failure to disclose both those sales practices and the existence of pending investigations of the Company by the U.S. Securities and Exchange Commission ("SEC") and U.S. Department of Justice ("DOJ"). *Id.* at 2. In considering the Second Paul Demand, the Board followed a similar procedure as it did with respect to the First Paul Demand. The Board delegated authority to a review committee, which conducted an investigation with the assistance of independent counsel and issued a report detailing its findings and its recommendation that the Board decline to pursue the potential claims asserted in the Second Paul Demand. *Id.* at 4. In November 2020, the Board voted to adopt the committee's findings and recommendations. *Id.* Defendants expect that an amended complaint will be filed in the *Andersen* action (consistent with the Court's January 20, 2021 order (ECF No. 38)), which will add the claims and allegations from the

Second Paul Demand and thus align the substantive allegations in the *Andersen* case with the substantive allegations in *Viskovich* and *Olin*.[5]

B.   **The *Viskovich* Action**

On November 20, 2020, plaintiff Anthony Viskovich filed the *Viskovich* action in this Court, asserting derivative breach of fiduciary duty claims against several of the Company's current and former directors and executives. Among other things, the Viskovich Complaint alleges that, beginning in 2015, the defendants caused or permitted the Company to issue supposedly misleading statements and omissions regarding its performance, demand for its products, and accounting practices. Viskovich Complaint ¶¶ 2-5, 49, 116. The Viskovich Complaint also challenges the Company's use of pull forward sales practices and its alleged failure to disclose both those sales practices and the investigations by the SEC and DOJ. *Id.* ¶¶ 3-4, 44-47.

Less than two months prior to filing his case, Mr. Viskovich purportedly sent a letter to the Board, dated September 22, 2020, demanding that the Company investigate and pursue claims similar to those asserted in his complaint (the "Viskovich Demand"). Viskovich Complaint ¶ 6-8.[6] The Board only became aware of the Viskovich Demand when the Viskovich Complaint was filed. Groner Decl. Ex. A. Promptly thereafter (and despite the fact that Mr. Viskovich had already filed suit), the Board referred the Viskovich Demand to the same

---

[5] At or around the same time that the Board declined to pursue the potential claims asserted in the Second Paul Demand, the Board also declined to pursue potential claims asserted in demands sent by other purported Company stockholders, including Robert Lowinger, William L. Robison, and Oscar Weller (the "Demand Stockholders"). The Demand Stockholders are coordinating with the *Andersen* and *Viskovich* plaintiffs, and have not filed their own complaints.

[6] The Viskovich Demand incorporated by reference an earlier demand letter allegedly sent by Patrick McDonald, another purported Under Armour stockholder. Mr. McDonald is not a party to the *Viskovich* case and, to Defendants' knowledge, has not filed any litigation (derivative or otherwise) asserting the claims in his demand.

6

committee of directors that the Board had previously authorized to investigate the claims asserted in the Second Paul Demand. The investigation in response to the Viskovich Demand remains pending as of the date of this filing.

### C. The *Olin* Action

On September 1, 2020, plaintiff Dale Olin filed the *Olin* action in this Court, asserting derivative breach of fiduciary duty claims against several of the Company's current and former directors and executives. *Olin* is designated as a related case to *Andersen*. *See* Civil Cover Sheet, *Olin*, No. 20-cv-2523-RDB (D. Md. Sept. 1, 2020), ECF No. 1-2. Among other things, the Olin Complaint alleges that, beginning in August 2016, the defendants caused or permitted the Company to issue supposedly misleading statements and omissions regarding its performance, demand for its products, and accounting practices. Olin Complaint ¶¶ 61-84. The Olin Complaint also challenges the Company's use of pull forward sales practices and its alleged failure to disclose both those sales practices and the investigations by the SEC and DOJ. *Id.* ¶¶ 57-97. Mr. Olin did not make a demand on the Board prior to filing suit. Rather, Mr. Olin alleges that demand was futile (and thus excused) because the Board was not sufficiently independent to impartially assess such a demand. *Id.* ¶¶ 106-41.[7]

The *Olin* case is actually the second derivative action Mr. Olin and his attorneys have filed challenging the Company's alleged misstatements regarding its performance and its sales

---

[7] A week after *Olin* was filed, plaintiff Stacy Smith filed a separate stockholder derivative lawsuit in this Court, including allegations similar to those asserted in *Olin*, under the caption *Stacy Smith v. Kevin Plank, et al.*, No. 20-cv-2589-RDB (D. Md.). Like Mr. Olin, Ms. Smith did not make a demand on the Board before filing suit and instead asserted that demand was excused. *See* Verified Shareholder Derivative Complaint, *Smith*, No. 20-cv-2589-RDB (D. Md. Sept. 8, 2020), ECF No. 1 ¶¶ 63, 225-96 ("Smith Complaint"). On December 21, 2020, the Court consolidated *Olin* and *Smith* pursuant to a stipulation between the parties to those actions. *See* Order, *Olin*, No. 20-cv-2523-RDB (D. Md. Dec. 21, 2020), ECF No. 10 (the "Olin Consolidation Order").

and accounting practices. On December 26, 2019, Mr. Olin filed a stockholder derivative action including similar allegations in Maryland State Court under the caption *Dale Olin v. Kevin Plank, et al.*, No. 24-C-19-006850 (Md. Cir. Ct. Balt. City Dec. 26, 2019) (the "Olin State Court Action"). Mr. Olin did not make a demand before filing this earlier suit either, instead claiming that demand would have been futile because a majority of the Board allegedly participated in the purported wrongdoing. Groner Decl. Ex. B ¶¶ 11, 87-94. In March 2020, the defendants moved to dismiss the complaint in the Olin State Court Action for failure to adequately plead demand futility. *See* Groner Decl. Ex. C. Later that same month, Mr. Olin voluntarily dismissed the Olin State Court Action rather than oppose the motion to dismiss. *See* Groner Decl. Ex. D.

The primary difference between the claims in the *Olin* case currently before this Court and the claims in the prior Olin State Court Action is the addition of allegations explicitly linking the Olin Complaint's demand futility claims to the Board's decision to decline to pursue the potential claims asserted in the First Paul Demand (which was also the basis on which Mr. Paul and Mr. Andersen brought the *Andersen* action). Olin Complaint ¶¶ 107-22. Specifically, the Olin Complaint asserts that a demand would have been futile primarily because the Board previously rejected the First Paul Demand, which Mr. Olin claims supposedly "demonstrated unequivocally that [the Board] will not permit a derivative action to proceed based upon [the] false statements and accounting irregularities" alleged in the Olin Complaint. *Id.* ¶ 118.

## ARGUMENT

Rule 42(a) of the Federal Rules of Civil Procedure governs consolidation, providing that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a). As a district court in the Fourth Circuit recently observed, "[c]onsolidation of similar shareholder derivative actions can be particularly beneficial to courts and parties by expediting pretrial proceedings, avoiding needless duplication, and

8

minimizing expenditure of time, effort, and money." *Nally ex rel. 3D Sys. Corp. v. Reichental*, 2017 WL 1135122, at *2 (D.S.C. Mar. 27, 2017). To that end, consolidation of demand futility and demand refused cases into a single derivative action reduces the "significant risk of duplicative efforts and expenses on the part of the parties" where, as is the case here, "the cases arise[] out of the same operative facts and raise[] similar legal issues." *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (consolidating demand refused and demand futility cases into a single action over objections of plaintiffs). There are two primary elements of the derivative actions at issue here: (1) the substantive breach of fiduciary duty claims, which concern the alleged wrongdoing, and (2) the procedural claims, which concern plaintiffs' alleged compliance with Maryland's demand requirement.[8] Because of the similarities in the substantive and procedural issues that will be raised in all three cases, consolidation of *Olin* with *Andersen* and *Viskovich* is appropriate.[9]

There is no dispute—nor could there be—that there is significant overlap between the substantive issues that will be raised in the three actions:

- All three actions are based on substantially similar factual allegations. They all challenge the Company's disclosures, and *Olin* and *Viskovich* challenge (and *Andersen* is expected to challenge) the Company's sales and accounting practices, including the use of pull forward sales allegedly to conceal purportedly declining demand for the Company's products and maintain quarterly sales growth rates. *See* ECF No. 35-1 at 2, 6 (describing the overlap between the factual allegations in *Andersen* and *Viskovich*); Olin Complaint ¶¶ 4, 8; Smith Complaint ¶¶ 8-49.

---

[8] As the *Andersen* and *Viskovich* plaintiffs concede (ECF No. 35-1 at 1-2 n.1), Maryland law will govern the Court's analysis of the plaintiffs' compliance (or noncompliance) with the demand requirement because Under Armour is a Maryland corporation. *See Weinberg v. Gold*, 838 F. Supp. 2d 355, 357 (D. Md. 2012) (applying the law of the state of incorporation to analyze plaintiff's compliance with demand requirement).

[9] The Olin Consolidation Order "was without prejudice to (i) the right of Defendants or any other party" to seek further consolidation "with any other derivative action brought on behalf of Under Armour, including the *Andersen* Action, and (ii) the right of any party to propose a leadership structure for any such consolidated action." Olin Consolidation Order ¶ 2.

9

- All three cases involve similar causes of action for breach of fiduciary duty. Specifically, all three plaintiffs assert claims that the defendants breached their fiduciary duties by causing or permitting the Company to issue the supposedly false and misleading statements at issue. ECF No. 35-1 at 6 (describing breach of fiduciary duty claims in the complaints in *Andersen* and *Viskovich*); ECF No. 1 ¶¶ 274-78 (Count I); Viskovich Complaint ¶¶ 115-20 (Count I); Olin Complaint ¶¶ 142-46 (Count I); Smith Complaint ¶¶ 297-302 (Count I).[10]

- The cases are each brought against many of the same defendants. Of the sixteen named defendants across the three cases, *Olin* shares ten defendants with *Andersen* and fourteen defendants with *Viskovich*.

Despite the fact that the three cases will raise substantially similar substantive issues, the *Andersen* and *Viskovich* plaintiffs nevertheless object, purportedly on procedural grounds, to consolidation of *Olin* with their cases. ECF No. 35-1 at 1-2 n.1. The lone basis for their objection is that they made demands on the Board before filing suit, whereas the *Olin* plaintiffs did not. *Id.* The plaintiffs in *Andersen* and *Viskovich* claim that there are "differing threshold issues" between their cases and *Olin* because the *Olin* plaintiffs "must demonstrate that demand on the Board [] was futile under Maryland law, a showing [the *Andersen* and *Viskovich* plaintiffs] need not make." *Id.* This argument fails to provide an adequate basis to preclude consolidation.

Under Maryland law, *Olin* does not raise "differing threshold issues" from *Andersen* and *Viskovich* simply because the *Olin* plaintiffs claim that demand was excused. Maryland imposes a stringent demand requirement and only recognizes a "very limited exception" to that requirement where a plaintiff "clearly demonstrate[s], in a very particular manner" that demand is excused because "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a

---

[10] Like the complaints in *Andersen* and *Viskovich* (ECF No. 35-1 at 6), the Smith Complaint also asserts unjust enrichment claims. Smith Complaint ¶¶ 315-19 (Count IV).

10

demand in good faith and within the ambit of the business judgment rule"—*i.e.*, that the board lacks independence. *Werbowsky v. Collomb*, 362 Md. 581, 620 (2001).[11] In light of this strict demand requirement, however, the Maryland Court of Appeals has observed that "it is clear that [a] derivative plaintiff may continue to contest the independence of [] board members after filing [] a demand." *Boland*, 423 Md. at 331-32 n.25 (a "byproduct" of Maryland's stringent demand requirement "is that the procedural distinctions between a 'demand excused' and 'demand refused' action may no longer be viable"); *see also Tapert v. Poppe*, 2019 WL 3856008, at *7 (Md. Cir. Ct. Aug. 14, 2019) (rejecting argument that derivative plaintiff who made a demand before filing suit waived arguments that the board lacked independence). In other words, under Maryland law, director independence can be contested by plaintiffs in both demand refused cases (like *Andersen* and *Viskovich*) and demand futility cases (like *Olin*).

In fact, here, the issue of director independence is contested in all of the actions. In *Olin*, the plaintiffs allege, in support of their demand futility claims, that the Board was not sufficiently independent to impartially assess a demand. *E.g.*, Olin Complaint ¶¶ 106-41. Similarly, in *Andersen* and *Viskovich*, the plaintiffs each allege, in support of their claims that the Board wrongfully rejected their respective demands, that the Board was not sufficiently independent to impartially assess their demands. *See* ECF No. 1 ¶¶ 264-67; Viskovich Complaint ¶¶ 102-14.[12] These are hardly "differing threshold issues." Because the Board's independence is challenged

---

[11] There is a second exception to the demand requirement where the corporation would face "irreparable harm" in "awaiting a response to a demand" (*Werbowsky*, 362 Md. at 620), but that exception is inapplicable here.

[12] For the avoidance of doubt, Defendants in no way concede that any plaintiffs have adequately pled that demand was futile, that the Board at any time lacked independence or disinterestedness, or that the demands at issue were wrongfully refused. Defendants are simply describing the overlap in the plaintiffs' <u>allegations</u> in the various derivative cases.

11

in *Olin*, *Andersen*, and *Viskovich*, the mere fact that the plaintiffs in *Olin* are pursuing a demand futility theory does not weigh against (much less preclude) consolidation of the cases.

The overlap across the cases is further underscored by the particular manner in which the Olin Complaint attempts to plead demand futility. Part of the basis on which the Olin Complaint pleads that it would have been a "futile, wasteful, and useless act" for Mr. Olin to make a demand on the Board is that the Board had already rejected the First Paul Demand (which rejection, as noted above, gave rise to the *Andersen* action). Olin Complaint ¶¶ 106-18. The Olin Complaint extensively cites the pleadings from the *Andersen* action concerning the Board's response to the First Paul Demand (*id.* ¶¶ 107-22) and alleges that the Board's rejection of the First Paul Demand "demonstrated unequivocally that [the Board] will not permit a derivative action to proceed based upon false statements and accounting irregularities. Consequently, demand is futile regarding these issues" (*id.* ¶ 118). Of course, the complaint in the *Andersen* case likewise challenges the Board's rejection of the First Paul Demand.

Ultimately, *Andersen*, *Viskovich*, and *Olin* will "raise substantially similar legal and factual questions and will involve essentially the same motion practice, discovery, witnesses, documentary evidence and trial considerations." ECF No. 35-1 at 6-7. Given the overlap of both substantive and procedural issues, consolidation will "expedit[e] pretrial proceedings, avoid[] needless duplication, and minimiz[e] expenditure of time, effort, and money." *Reichental*, 2017 WL 1135122, at *2 (granting motions to consolidate related cases because, among other things, "consolidation . . . will be the most efficient use of the Court's and the parties' resources"); *see also Raines*, 227 F.R.D. at 2 ("[C]onsolidation is appropriate where the cost of defending . . . multiple actions may well do serious harm to the very corporation in whose interest they are supposedly brought."). The Court should therefore consolidate all three actions

12

and direct whichever lead plaintiffs are appointed to file or designate a single consolidated complaint in the consolidated action.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and consolidate the *Andersen*, *Viskovich*, and *Olin* actions into a single case.

[*signatures appear on following pages*]

Respectfully submitted,

Dated: January 21, 2021         **VENABLE LLP**

By:    */s/ G. Stewart Webb, Jr.*

G. Stewart Webb, Jr. (Federal Bar No. 00828)
Michael J. Wilson (Federal Bar No. 18970)
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
gswebb@venable.com
mjwilson@venable.com

**FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP**
James D. Wareham (Federal Bar No. 22890)
801 17th Street, NW
Washington, DC 20006
Telephone: (202) 639-700
Facsimile: (202) 639-7003
james.wareham@friedfrank.com

Samuel P. Groner (admitted *pro hac vice*)
Michael P. Sternheim (admitted *pro hac vice*)
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
samuel.groner@friedfrank.com
michael.sternheim@friedfrank.com

*Counsel for Defendants George W. Bodenheimer, Douglas E. Coltharp, Jerri L. DeVard, Mohamed A. El-Erian, Karen W. Katz, Eric T. Olson, Harvey L. Sanders, A.B. Krongard, William R. McDermott, and Byron K. Adams, Jr., and Nominal Defendant Under Armour, Inc.*

14

Dated: January 21, 2021             **HOGAN LOVELLS US LLP**

By:     */s/ Scott R. Haiber*
(signed with permission of Scott R. Haiber)
Scott R. Haiber (Federal Bar No. 25947)
100 International Drive, Suite 2000
Baltimore, MD 21202
Telephone: (410) 659-2700
Facsimile: (410) 659-2701
scott.haiber@hoganlovells.com

*Counsel for Defendant Kevin Plank*

-and-

Jon M. Talotta
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
jon.talotta@hoganlovells.com

*Of Counsel*

Dated: January 21, 2021             **WHARTON LEVIN EHRMANTRAUT & KLEIN P.A.**

By:     */s/ Michael S. Rubin*
(signed with permission of Michael S. Rubin)
Michael S. Rubin (Federal Bar No. 30000)
104 West Street
Annapolis, Maryland 21404-0551
Telephone: (410) 263-5900
Facsimile: (410) 280-6583
msr@wlekn.com

*Counsel for Defendant Patrik Frisk*

-and-

15

                              **SCHULTE ROTH & ZABEL LLP**
Peter H. White
Alex Wharton
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
Telephone: (202) 729-7470
Facsimile: (202) 730-4250
pete.white@srz.com
alex.wharton@srz.com

*Of Counsel*

Dated: January 21, 2021          **ETHRIDGE, QUINN, KEMP, MCAULIFFE, ROWAN & HARTINGER LLP**

By:            */s/ Paul F. Kemp*
(signed with permission of Paul F. Kemp)
Paul F. Kemp (Federal Bar No. 01260)
33 Wood Lane
Rockville, MD 20850-2233
Telephone:  (301) 762-1696
Facsimile:  (301) 762-7691
pfk@eqmrh.com

*Counsel for Defendant David E. Bergman*

-and-

**EDWARD B. MACMAHON, JR., PLC**
Edward B. MacMahon, Jr
107 East Washington Street
PO Box 25
Middleburg, VA 20118
Telephone: (540) 687-3902
ebmjr@macmahon-law.com

*Of Counsel*

Dated: January 21, 2021          **KRAMON & GRAHAM, P.A.**

By:      */s/ James P. Ulwick*
(signed with permission of James P. Ulwick)
James P. Ulwick (Federal Bar No. 00536)
One South Street, Suite 2600
Baltimore, Maryland 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
julwick@kg-law.com

-and-

**NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A.**
Brian M. Boyle (Federal Bar No. 28242)
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8541
Facsimile: (410) 332-8543
bmb@nqgrg.com

*Counsel for Defendant Karl-Heinz Maurath*

Dated: January 21, 2021            **ZUCKERMAN SPAEDER LLP**

By:    */s/ Adam Abelson*
(signed with permission of Adam Abelson)
Adam Abelson (Federal Bar No. 29532)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 949-1148
Facsimile: (410) 659-0436
aabelson@zuckerman.com

*Counsel for Defendants Lawrence Molloy and Brad Dickerson*

-and-

Aitan D. Goelman (admitted *pro hac vice*)
1800 M Street NW, Suite 1000
Washington, D.C. 20036-5807
Telephone: (202) 778-1999
Facsimile: (202) 822-8106
agoelman@zuckerman.com

*Of Counsel*

18