# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BROCK ANDERSEN, *et al.*, derivatively on behalf of UNDER ARMOUR, INC., | |
| Plaintiffs, | Lead Case No.: RDB-18-2239 |
| v. | (This Document Relates To: All Actions) |
| KEVIN A. PLANK, *et al.*, | |
| Defendants, | |
| -and- | |
| UNDER ARMOUR, INC., | |
| Nominal Defendant. | |

## DEMAND MADE PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS DALE OLIN'S AND STACY SMITH'S MOTION FOR APPOINTMENT OF CO-LEAD COUNSEL AND CO-LIAISON COUNSEL FOR PLAINTIFFS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...............................................................................................

INTRODUCTION ....................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................6

ARGUMENT ...........................................................................................................6

I.   Demand Futility Plaintiffs' Proposed Leadership Structure Suffers from 7
     Numerous Deficiencies...................................................................................7

     A.   Demand Futility Plaintiffs' Leadership Proposal Is Highly Inefficient and
          Fails to Provide for Effective Leadership ...............................................7

     B.   Demand Futility Plaintiffs' Leadership Proposal Fails to Establish How
          the Differing Demand Theories Would Be Advanced ...........................8

     C.   Demand Futility Plaintiffs' Leadership Proposal Is Comparatively *Less*
          Inclusive than Paul and Viskovich's Proposal.......................................11

II.  Unlike the Demand Futility Plaintiffs, Plaintiffs Paul and Viskovich Have
     Demonstrated Their Commitment to this Action and Their Suitability to Serve
     as Lead Plaintiffs ...................................................................................... 13

III. The Demand Futility Plaintiffs' Cases Are Subject to Unique Defenses............................16

     CONCLUSION...................................................................................................18

## TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Boeing Co. v. Shrontz*,
    1992 WL 81228 (Del. Ch. Apr. 20, 1992) ............................................................................9

*Brosz v. Fishman*,
    2016 WL 7494883 (S.D. Ohio Dec. 29, 2016) ...........................................................10, 11

*In re ITT Corp. Deriv. Litig.*,
    588 F. Supp. 2d 502 (S.D.N.Y. 2008).........................................................................10, 11

*In re Under Armour, Inc. S'holder Deriv. Litig.*,
    2020 WL 1505575 (D. Md. Mar. 30, 2020)...................................................................4, 17

*Kautz v. Sugarman*,
    456 Fed. App'x 16 (2d Cir. 2011).....................................................................................17

*Nally on behalf of 3D Sys. Corp. v. Reichental, et al.*,
    2017 WL 1135122 (D.S.C. Mar. 27, 2017) .....................................................................6, 7

*Potter v. Hughes*,
    2006 WL 7089899 (C.D. Cal. June 30, 2006) ...................................................................9

*Sommers ex rel. FLIR Sys., Inc. v. Lewis*,
    641 F. Supp. 2d 1151 (D. Or. 2009) ..............................................................................9, 11

*Stotland v. GAF Corp.*,
    469 A.2d 421 (Del. 1983) ..................................................................................................9

*Werbowsky v. Collomb*,
    766 A.2d 123 (Md. 2001) ..................................................................................................9

Plaintiffs Balraj Paul ("Paul") and Anthony Viskovich ("Viskovich" and collectively, the "Demand Made Plaintiffs") hereby respond in opposition to plaintiffs Dale Olin's ("Olin") and Stacy Smith's ("Smith" and collectively, the "Demand Futility Plaintiffs") Motion for Appointment of Co-Lead Counsel and Co-Liaison Counsel for Plaintiffs ("Demand Futility Leadership Motion") as follows:

## INTRODUCTION

Under the guise of serving the best interests of Under Armour, Inc. ("Under Armour" or the "Company") and all derivative plaintiffs,[1] Demand Futility Plaintiffs propose that *four* co-lead counsel—one from each of the actions filed in this Court to date—lead the consolidated derivative action. Such a bloated leadership structure is neither required nor advisable.

It is not required because Demand Futility Plaintiffs concede undersigned counsel's ability to serve as lead counsel and Demand Made Plaintiffs' suitability as lead plaintiffs in the consolidated action. Demand Futility Plaintiffs have not opposed appointment of Paul and Viskovich as lead plaintiffs nor do they seek appointment as lead plaintiffs themselves. And, Demand Futility Plaintiffs themselves advance undersigned counsel's appointment as lead counsel (while also seeking to appoint their counsel to the same role). All factions thus do not disagree

---

[1]    Derivative plaintiffs in this action consist of the Demand Made Plaintiffs, who made demands on Under Armour's board of directors ("Board"), and the Demand Futility Plaintiffs, who made no such demands and contend that demand on the Board would have been futile. Additional shareholders with an interest in this litigation, and who support Paul and Viskovich's Motion for Appointment of Co-Lead Plaintiffs and Co-Lead Counsel (ECF 51, "Demand Made Leadership Motion"), are three Under Armour shareholders who also served litigation demands on the Board, all of which have also been refused—Robert Lowinger ("Lowinger"), William L. Robison ("Robison"), and Oscar Weller ("Weller" and collectively, the "Demand Shareholders"). For the sake of efficiency, the Demand Shareholders intend to join in the consolidated amended complaint Paul and Viskovich plan to file if the Demand Made Leadership Motion is granted, rather than file their own separate actions.

that Demand Made Plaintiffs should lead this litigation and their counsel are well qualified to serve as lead counsel.

Demand Futility Plaintiffs' leadership proposal is also not advisable because it subverts the very purpose and policies behind appointing lead counsel.  As Demand Futility Plaintiffs acknowledge in their papers, the rationale supporting appointment of lead counsel is to allow for the centralized management and prosecution of the consolidated action in order to promote economic and judicial efficiency.  Yet, paradoxically, Demand Futility Plaintiffs' leadership proposal does not serve any such purpose or promote any such policy, and in fact, undercuts both. Indeed, a four-firm co-lead structure would *avoid* selection of lead counsel to manage the consolidated action and would *impede* judicial efficiency, as it would likely result in numerous redundancies.[2]  This is the exact situation that courts appointing lead counsel seek to prevent.

Inefficiency is not the only deficiency plaguing Demand Futility Plaintiffs' leadership proposal.  Demand Futility Plaintiffs also fail to credibly address how plaintiffs' differing and conflicting theories of the case—wrongful refusal and demand futility—would be advanced in a single consolidated complaint under a four-firm co-lead counsel structure where half of counsel advances wrongful refusal claims, and the other half argues demand futility.  Although they argue for prosecution of both theories simultaneously, Demand Futility Plaintiffs cite to no Maryland authority supporting that approach nor is undersigned counsel aware of any.  In fact, virtually all courts to have addressed the issue have concluded that demand futility is subsumed and/or mooted by wrongful refusal claims when the two have been consolidated together.  Under Demand Futility

---

[2]      In addition to suggesting four co-lead counsel be appointed, Demand Futility Plaintiffs also seek the appointment of four firms as co-liaison counsel.  While Paul and Viskovich agree that each of the firms proposed for liaison counsel are reputable and well-qualified, having four firms serving in that role is similarly redundant and inefficient.

Plaintiffs' proposal, counsel would surely reach an impasse as to how to prosecute this action, particularly given that their proposal offers no dispute resolution mechanism among evenly split counsel.

Additionally, Demand Futility Plaintiffs' leadership proposal is not more inclusive in any meaningful way. It cuts out entirely the Demand Shareholders and their counsel, offering them no role whatsoever in the prosecution of this action (the likely result of which would be the Demand Shareholders filing three additional, separate lawsuits). By contrast, Paul and Viskovich's leadership proposal invites the greatest number of firms and shareholders into a clearly defined and efficient leadership structure as members of the Executive Committee.

Apart from these deficiencies, plaintiffs Paul and Viskovich's commitment to this action is unmatched by Demand Futility Plaintiffs. Paul and Viskovich alone can advance Under Armour's claims for the benefit of all derivative plaintiffs. Together, Paul and Viskovich have (i) pursued their demands and the claims therein for a combined total of more than *four* years; (ii) moved to serve as lead plaintiffs of the consolidated action; and (iii) submitted a sworn joint declaration under penalty of perjury in support thereof ("Joint Declaration," ECF 51-6) attesting to their investment experience, Under Armour stock ownership, their understanding of their roles and obligations in the action, and their desire to right the wrongs perpetrated against the Company and its shareholders. In addition, Paul and Viskovich have demonstrated early case leadership by garnering the support of the remaining Demand Shareholders who agreed to work collaboratively as members of an executive committee as opposed to pursuing individual litigations. In stark contrast, the Demand Futility Plaintiffs: (i) have prosecuted their federal claims since only September 2020, (and only after Olin abandoned his state court claims months earlier, rather than

respond to Defendants' motion to dismiss for failure to make a demand);[3] (ii) have not moved to serve as lead plaintiffs in this action (or in their prior actions pre-consolidation); and (iii) have failed to provide this Court with any information regarding themselves, their Under Armour stock ownership, or their commitment to this action, whether by sworn declaration or otherwise.

Nor would the appointment of Demand Futility Plaintiffs' counsel as co-lead counsel add value to the leadership structure or serve the interests of the derivative plaintiffs, if at all.  Not having made a demand themselves, Demand Futility Plaintiffs are legally incapable of representing the interests of plaintiffs Paul and Viskovich or the Demand Shareholders.  Only shareholders that have actually sent litigation demands have standing to pursue claims arising from the demands, and to allege that the demands were wrongfully refused.

Indeed, Demand Futility Plaintiffs committed the grave strategic and tactical error of pursuing a case alleging demand futility—which cases rarely, if ever, survive motions to dismiss under Maryland law—rather than properly serve litigation demands on the Under Armour's Board of Directors ("Board"), the preferred course of conduct under Maryland law, and as plaintiffs Paul, Viskovich, and the Demand Shareholders did.[4]

---

[3]     Olin originally filed his shareholder derivative action in state court in Baltimore, Maryland on December 26, 2019.  *Olin v. Under Armour, Inc. et al.*, No. 24-C-19-006850 (Md. Cir. Ct.) (the "*Olin* State Court Action"), ECF 1.  Defendants moved to dismiss that action (ECF 39-4), in response to which Olin voluntarily dismissed his claims (ECF 39-5), and on September 1, 2020, refiled in this Court.  *Olin v. Plank, et al.*, Case No. 1:20-cv-02523-RDB (the "*Olin* Action"), ECF 1.

[4]     Moreover, each of the Demand Futility Plaintiffs face a steep climb in connection with their alleged theories of demand futility.  Specifically, Olin's demand futility theory hinges on the Board's refusal of plaintiff Paul's litigation demand as evidence of the futility of making a demand—an approach that courts interpreting Maryland law have squarely rejected.  *See infra* Section I. B.  And Smith's demand futility theory is equally ill-fated because it rests on the very same allegations that Judge George L. Russell, III recently rejected in *In re Under Armour, Inc. S'holder Deriv. Litig.*, 2020 WL 1505575 (D. Md. Mar. 30, 2020).

4

As a consequence of taking this highly disfavored path, Demand Futility Plaintiffs do not have access to the confidential Board report refusing plaintiff Paul's and the Demand Shareholders' demands—only counsel for the Demand Made Plaintiffs have access to that vital document (and any related documents that they should receive in connection with the refusals).[5] Nor is there any indication that Demand Futility Plaintiffs will ever be granted access to the report, such that Demand Futility Plaintiffs' counsel have no insight into the basis for the wrongful refusals and thus are incapable of representing any plaintiff alleging a wrongful refusal theory. That counsel cannot review the document evidencing the Board's allegedly wrongful refusals of plaintiffs Paul's and the Demand Shareholders' demands, which will form the basis for Demand Made Plaintiffs' wrongful refusal claims, further illustrates why neither Demand Futility Plaintiffs nor their counsel are positioned to lead this action—even if it is alongside Paul and Viskovich and their counsel.

Finally, Demand Futility Plaintiffs' leadership proposal wrongly assumes that without their counsel serving in a lead capacity, neither their nor the Company's interests will be adequately protected.[6] But this is not true. As an initial matter, the Demand Futility Plaintiffs ignore the fact

---

[5]   The Board's most recent response to the Demand Shareholders' demands contains confidential information that is the subject of a non-disclosure and confidentiality agreement ("NDA") entered into by each of the Demand Made Plaintiffs, and it is anticipated that the Board's forthcoming response to the Viskovich demand also will contain confidential information subject to a similar NDA. The fact that the Demand Made Plaintiffs and Demand Shareholders are privy to a confidential report, and likely a second confidential report, and the Demand Futility Plaintiffs are not, further underscores the adequacy of the Demand Made Plaintiffs and their counsel to be appointed as lead plaintiffs and counsel here.

[6]   As acknowledged in the Demand Futility Leadership Motion, undersigned counsel invited Demand Futility Plaintiffs' counsel to participate in plaintiffs Paul and Viskovich's proposed leadership structure as members of the Executive Committee precisely so that Demand Futility Plaintiffs' counsel could remain involved in the litigation (as appropriate) on the Demand Futility Plaintiffs' behalf. *See* ECF 50-1 at 9. The Demand Futility Plaintiffs' counsel refused this proposal, opting instead to pursue their own appointment.

that **the real party in interest is Under Armour itself**, and by following the course heavily favored under Maryland law in making demands, the Demand Shareholders are better positioned to protect **Under Armour's interests**.  Further, the Demand Futility Plaintiffs' path to obtaining standing to even pursue the claims on behalf of Under Armour are necessarily subsumed by the Demand Made Plaintiffs' wrongful refusal claims.  In other words, any adjudication by this Court of the issue of wrongful refusal will be dispositive of demand futility, such that plaintiffs Paul and Viskovich and their counsel can adequately protect the Demand Futility Plaintiffs' purported interests as well.[7]

Thus, the Court should deny the Demand Futility Leadership Motion and instead grant the Demand Made Leadership Motion since the leadership structure detailed therein is comparatively more efficient for the parties and the Court, and will further the interests of all derivative plaintiffs, Under Armour shareholders, and most importantly, Under Armour itself.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Paul and Viskovich respectfully refer the Court to the memorandum of law submitted in support of the Demand Made Leadership Motion for a discussion of the relevant procedural and factual background, which plaintiffs Paul and Viskovich incorporate by reference as if fully set forth herein.  *See* ECF 51-1 at 2–6.

## ARGUMENT

The Court has been presented with two very different proposals for leadership of the consolidated action.[8]  Paul and Viskovich propose a two-firm co-lead structure with an Executive

---

[7]     The reverse, however—that any adjudication of demand futility would be dispositive of the wrongful refusal issue—is not true, establishing yet another reason why neither Demand Futility Plaintiffs nor their counsel  are well-positioned to lead this action.

[8]     All parties agree that the Court has inherent authority to appoint lead plaintiffs and counsel in a derivative action.  Indeed, both the Demand Made and the Demand Futility Plaintiffs cite to *Nally on behalf of 3D Systems Corp. v. Reichental, et al.*, No. 0:15-cv-03756-MGL, 2017 WL 1135122, at *2 (D.S.C. Mar. 27, 2017) for the standards by which leadership can be measured.

Committee comprised of other like-minded firms representing like-minded shareholders that sent litigation demands, and capable co-liaison counsel.  In contrast, Demand Futility Plaintiffs take a "participation trophy" approach, presenting the Court with a bloated four-firm structure with each firm equally positioned, despite the stark differences in strategy and disparate access to critical information.  For the reasons set forth below, the Court should reject Demand Futility Plaintiffs' proposed leadership structure and adopt that proffered by Paul and Viskovich.

**I.    Demand Futility Plaintiffs' Proposed Leadership Structure Suffers from Numerous Deficiencies**

**A.    Demand Futility Plaintiffs' Leadership Proposal Is Highly Inefficient and Fails to Provide for Effective Leadership**

The prosecution of this action will require the determination of strategy, designation of tasks to avoid duplication, and marshalling the collective ability of all firms to present the best arguments on behalf of Under Armour in the most cogent manner.

Demand Futility Plaintiffs' leadership structure consisting of ***four*** firms in ***equal*** positions of leadership attempting to act as one in no way achieves those goals.  The potential for redundancies and duplicative work are far higher with four co-lead counsel, and the difficulties of working, functioning, and speaking on Under Armour's behalf as a single voice become exponentially more difficult.  Worse still, Demand Futility Plaintiffs offer no mechanism to resolve an even split among the firms when the inevitable dispute on strategy arises.  This is of particular

---

*See* 50-1 at 5; 51-1 at 16.  However, Olin and Smith mistakenly suggest that *Nally* supports their four-lead-counsel and four-liaison-counsel leadership proposal.  In *Nally*, the Court appointed four co-lead counsel where, unlike here, the cases at issue all advanced the same theory of the case—that demand was futile under Delaware law—and thus were all equally positioned to represent the interests of the company, whereas here, the plaintiffs allege differing and conflicting threshold theories, with the Demand Futility Plaintiffs' futility theory demonstrably weaker than the Demand Made Plaintiffs' refusal case, such that counsel are not equally positioned to represent the Company's interests.  *Nally*, 2017 WL 1135122, at *3.  Thus, *Nally* in no way supports Olin and Smith's proposed leadership structure.

concern where, as here, two Demand Futility Plaintiffs on the one hand, and two Demand Made Plaintiffs on the other, advance conflicting theories of the case.[9]

By contrast, Paul and Viskovich's proposed leadership structure is far more efficient, consisting of only two co-lead counsel compared to four (among the eleven firms with an interest in this action) and two co-liaison counsel compared to four. Moreover, because Paul and Viskovich's proposed structure also includes plaintiffs as proposed lead plaintiffs (as is further detailed herein, *see* § II), they have discussed in a joint call with their proposed lead counsel a dispute resolution method (in the unlikely event one were to occur). ECF 51-6 at ¶10.

Thus, Demand Futility Plaintiffs' leadership proposal is far less efficient and lacks effective leadership compared to Paul and Viskovich's proposal, and should be rejected.

### B. Demand Futility Plaintiffs' Leadership Proposal Fails to Establish How the Differing Demand Theories Would Be Advanced

Separate from the consideration of efficiency, the appointment of a leadership structure is important because it will determine how to present plaintiffs' divergent theories concerning pre-suit demand on Under Armour's Board.[10]

As discussed in the memorandum in support of the Demand Made Leadership Motion, Paul's and the other Demand Shareholders' demands that the Under Armour Board investigate and

---

[9]     The inefficiency of having four separate firms co-lead this action is further underscored here, where Demand Futility Plaintiffs' counsel do not have access to the confidential Board report refusing Paul's and the Demand Shareholders' Demands (nor any forthcoming report with respect to Viskovich's demand). As such, they do not—and cannot—know the grounds on which the litigation demands were refused, rendering them decidedly handicapped in advancing a wrongful refusal theory as lead counsel. Thus, their involvement in a lead capacity is completely superfluous here.

[10]     This, of course, is of vital concern for Under Armour and its shareholders because, as discussed herein, the Demand Made Plaintiffs' case theory is demonstrably stronger than that advanced by the Demand Futility Plaintiffs.

take legal action were wrongfully refused.  *See* ECF 51-1 at 2–4, 7–8.[11]  Conversely, Demand Futility Plaintiffs argue that making those very demands would be futile.  *Id.* at 5–6, 7–8.

Because the legal analysis of demand refusal and demand futility varies so greatly, many courts have held that the cases cannot be pursued together.  *See, e.g.*, *Sommers ex rel. FLIR Sys., Inc. v. Lewis*, 641 F. Supp. 2d 1151, 1156 (D. Or. 2009); *Stotland v. GAF Corp.*, 469 A.2d 421, 422–23 (Del. 1983) (holding that a demand by one of two named plaintiffs precluded the other plaintiff from alleging demand futility); *Boeing Co. v. Shrontz*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992) (same, "stockholders must make a choice either to make demand or attempt to establish demand futility."); *Potter v. Hughes*, 2006 WL 7089899, at *8 (C.D. Cal. June 30, 2006), *aff'd*, 546 F.3d 1051 (9th Cir. 2008) ("derivative plaintiffs 'cannot cover all bases' by having one shareholder make a demand while another asserts demand futility.") (citation omitted).

Nor have Demand Futility Plaintiffs explained how they, let alone any other counsel, could successfully advocate both demand theories at the same time, given that the theories are intrinsically at odds with one another.  This fact is further exacerbated because, as this Court stated in its order consolidating this action, "[u]nder Maryland law, demand may be excused where the board lacks independence, meaning 'a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule'" (ECF 41 at 4 (citing *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001)), which will necessarily be one of the issues (among others) that Paul and Viskovich (and the other Demand Shareholders) will have to grapple with in connection with overcoming a motion to dismiss for wrongful refusal.  As

---

[11]     As discussed herein, plaintiffs anticipate a forthcoming refusal of plaintiff Viskovich's demand from the Board.

such, Demand Made Plaintiffs' theory of the case—wrongful refusal—will effectively subsume *any inquiry* of whether making a demand was a futile act, mooting entirely the Demand Futility Plaintiffs' demand futility theory.  ECF 51-1 at 9–11.

But Demand Futility Plaintiffs' proposed four-firm co-lead counsel suffers from the grave deficiency that it sets up a complete deadlock on how to address these demand issues, given that the firms it seeks to appoint as co-lead all disagree as to which theory plaintiffs should advance. Moreover, as detailed herein, Demand Futility Plaintiffs do not have access to the appropriate information to even assess which theory is stronger, how to overcome arguments as to which theory to advance, and have provided no mechanism by which to resolve disputes among the four proposed co-lead counsel over this important threshold issue.

Rather than unite around the Demand Made Plaintiffs' theory of the case (along with the other Demand Shareholders) to pursue the stronger of the two theories available to Under Armour, in a footnote, Demand Futility Plaintiffs attempt to argue that both theories can be advanced at the same time, relying on *Brosz v. Fishman*, 2016 WL 7494883, at *6 (S.D. Ohio Dec. 29, 2016), and *In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502 (S.D.N.Y. 2008), as purported support.  *See* ECF 50-1 at n.5.  However, these cases are easily distinguished.  As an initial matter, neither case interprets or applies Maryland law, but rather Ohio and Oregon law, respectively.  *Brosz*, 2016 WL 7494883, at *3 n.1 ("Ohio law applies to this action[.]"); *ITT Corp.*, 588 F. Supp. 2d at 1156 ("Demand futility is determined under the law of the company's incorporating state—in this case, Oregon.").[12]  Moreover, in *Brosz*, the demand futility and demand refusal cases were not consolidated until *after* there was a threshold ruling on a motion to dismiss, thereby alleviating the

---

[12]     Indeed, Demand Futility Plaintiffs do not point to any Maryland authority allowing both wrongful refusal and demand futility theories to proceed simultaneously in a single complaint, nor is undersigned counsel aware of any.

conflict between the two theories. *Brosz*, 2016 WL 7494883, at *6. Further, Demand Futility Plaintiffs' reliance on *ITT* is equally as misplaced, as that decision has been specifically addressed and rejected by other courts. *See, e.g.*, *Sommers*, 641 F. Supp. 2d at 1156 (finding demand futility shareholder was "bound by" demanding shareholder's demand and "therefore [could] not argue demand futility").

Thus, Demand Futility Plaintiffs' leadership proposal fails to properly account for prosecution of the differing demand theories in this consolidated action, and as such, should be rejected.

### C.     Demand Futility Plaintiffs' Leadership Proposal Is Comparatively *Less* Inclusive than Paul and Viskovich's Proposal

Although Demand Futility Plaintiffs' proposal may facially appear to be more inclusive with four co-lead counsel (compared to two), Paul and Viskovich's proposal is in fact more inclusive with respect to the other shareholders and firms with an interest in this litigation.

Paul and Viskovich's streamlined organization consisting of two lead counsel supported by an Executive Committee comprised of counsel for the Demand Shareholders provides a proper role for the greatest number of firms with an interest in this litigation. By comparison, Demand Futility Plaintiffs' proposal provides for the inclusion of only four firms—all as co-lead counsel (with all local firms appointed as liaison counsel)—leaving out entirely the three other Demand Shareholders and their counsel who followed Maryland law and the cases interpreting it and properly sent pre-litigation demands. In fact, the ***only reason*** these firms have not yet filed a case in this Court (or elsewhere) is because of Paul and Viskovich's (and their counsel's) diligence and leadership in seeking the most efficient path forward for the Court, the parties, and of course, Under Armour itself; but for that early and persistent leadership by Paul and Viskovich and their counsel, its likely that this Court would have before it a bevy of leadership motions to address.

Indeed, Paul and Viskovich's counsel have approached this litigation from a stance of inclusion as to all other firms involved from the start.  Counsel for Paul and Viskovich first reached out to counsel for the Demand Shareholders, and as Demand Futility Plaintiffs admit (*see* ECF 50-1 at 9), after having built a consensus among all the demanding shareholders, then reached out to counsel for the Demand Futility Plaintiffs proposing that they, too, join the Executive Committee.[13]   That offer that was inexplicably rebuffed, however, despite the demanding shareholders (five total) and ***eight*** law firms having agreed to the same leadership structure.  That counsel for Paul and Viskovich were able to build this consensus among eight firms involved in this litigation not only demonstrates counsel's regard for the inclusion of all counsel and shareholders with an interest in this litigation, but also counsel's leadership capabilities.[14]

Accordingly, because Demand Futility Plaintiffs' proposal suffers from these serious deficiencies (which do not similarly afflict Paul and Viskovich's proposal), the Court should reject Demand Futility Plaintiffs' proposed leadership structure.

---

[13]     If Demand Futility Plaintiffs would have accepted the proposal, they would have been shielded from any documents subject to the NDA, but Paul and Viskovich's counsel are confident that they would have been able to incorporate Demand Futility Plaintiffs' counsel into work via spot assignments not reliant on access to such confidential materials.

[14]     Notably, Demand Futility Plaintiffs do not take any issue with the qualifications of the firms representing Paul and Viskovich, nor do Paul and Viskovich take issue with the qualifications of Demand Futility Plaintiffs' counsel.  Indeed, it is not a question of any "aversion" to working with counsel for Demand Futility Plaintiffs, as they suggest (*see* ECF 50-1 at 9), but rather what organizational structure best serves the Company and this action based on the circumstances of this case and the threshold litigation decisions pursued by the various plaintiffs/shareholders.

**II.    Unlike the Demand Futility Plaintiffs, Plaintiffs Paul and Viskovich Have Demonstrated Their Commitment to this Action and Their Suitability to Serve as Lead Plaintiffs**

Plaintiffs Paul and Viskovich's demonstrated dedication to this action stands worlds apart from Demand Futility Plaintiffs, rendering Paul and Viskovich the best suited to lead this litigation with the assistance of their chosen counsel.

Indeed, plaintiffs Paul and Viskovich have been pursuing their respective litigation demands for a combined total of over *four years*.[15]   And since Paul served his demand on the Board more than three years ago, Johnson Fistel (on his behalf) has been in regular contact with counsel for Under Armour, tirelessly following up on Paul's demand and the Board's investigation into the allegations therein.  *See* ECF 51-1 at 3.  So, too, GPM has diligently pursued Viskovich's litigation demand (as well as that of another non-party shareholder) for nearly a year.  *See* ECF 51-1 at 4.  Likewise, the Demand Shareholders (who fully support the Demand Made Leadership Motion) have been pursuing their demands for a combined total of more than *two* years.[16]   By contrast, Demand Futility Plaintiffs only recently decided to get involved in this action on Under Armour's behalf, having filed their respective actions in this Court as recently as September 2020—roughly *six months* ago.  *Olin* Action, ECF 1 (filed September 1, 2020); *Smith* Action, ECF 1 (filed September 8, 2020).[17]

---

[15]    Plaintiff Paul made a demand on the Board on July 5, 2017, and plaintiff Viskovich made a demand on the Board on September 22, 2020, which incorporated by reference a demand made by Viskovich's counsel on behalf of another shareholder on May 29, 2020.  *See* ECF 51-1 at 3–4.

[16]    Specifically, Lowinger served his demand on the Under Armour Board on December 11, 2019; Weller served his demand on January 7, 2020; and Robison served his demand on January 28, 2020.

[17]    As discussed herein, while Olin previously pursued similar claims in state court in Maryland in December 2019 (*see Olin* State Court Action, ECF 1), he abandoned those claims in response to Defendants' motion to dismiss for failure to state a claim and then waited approximately nine months before filing a case in this Court.  *See* ECF 39-4 (Defendants' motion

Apart from the diligent pursuit of their respective demands culminating in this litigation, both Paul and Viskovich have affirmatively undertaken numerous actions evidencing their dedication to prosecuting Under Armour's claims relative to the Demand Futility Plaintiffs, including:

- Both Paul and Viskovich sought appointment as lead plaintiffs of the consolidated action. *See* 51-1. Demand Futility Plaintiffs did not. *See* ECF 50-1 (seeking only appointment of lead counsel, not lead plaintiffs).[18]

- In connection with the Demand Made Leadership Motion, both Paul and Viskovich submitted the Joint Declaration under penalty of perjury, attesting to, *inter alia*, (i) their shared desire "to help protect the long-term value of the Company" (ECF 51-6, ¶8); (ii) their joint interest in "ensur[ing] that Under Armour is not harmed, damaged, or penalized any further as a result of the misconduct" and intent to "h[o]ld accountable" "the individuals at Under Armour responsible for causing the alleged harm to the Company" (*id.*); and (iii) their "commit[ment] to prosecuting the claims asserted in the consolidated action vigorously for the benefit of nominal defendant Under Armour" (*id.*, ¶5). Demand Futility Plaintiffs did not.

- In their Joint Declaration, both Paul and Viskovich provided the Court with additional information regarding their respective occupations, investment experience, and current and continuous Under Armour stock ownership, and

---

to dismiss the *Olin* State Court Action); ECF 39-5 (voluntary dismissal of the *Olin* State Court Action).

[18]   Indeed, the Demand Futility Leadership Motion marks the second time that Demand Futility Plaintiffs have affirmatively decided *not* to seek to be appointed as lead plaintiffs. *See Olin* Action, ECF 3 (seeking appointment of only Demand Futility Plaintiffs' counsel, *but not* Demand Futility Plaintiffs as lead plaintiffs).

affirming their intention to hold Under Armour stock throughout the duration of the litigation, to enable the Court to assess their fitness to serve as lead plaintiffs. *See* ECF 51-6, ¶¶8. Demand Futility Plaintiffs did not.[19]

- In connection with the Demand Made Leadership Motion, Paul and Viskovich dedicated the time and effort necessary to meet and confer with one another and their counsel regarding their roles and responsibilities, and committed to their full understanding of the same. *See* ECF 51-6, ¶¶6–7 (declaring Paul and Viskovich "conferred with one another to discuss the merits, status, and management of the consolidated action" and "with counsel"); *id.*, ¶9 ("We fully appreciate and are aware of the duties and responsibilities we will undertake if the Court selects us and our counsel to serve as designated lead plaintiffs and lead counsel in the consolidated action."). Moreover, Paul and Viskovich also exchanged contact information with one another and one another's counsel to facilitate future dialogue regarding the action and discussed and agreed to a dispute resolution mechanism in the event that plaintiffs Paul and Viskovich disagree on how to best prosecute the action. *Id.*, ¶10. Demand Futility Plaintiffs did not.[20]

---

[19]    As a result of this failure on Demand Futility Plaintiffs' part, the Court has before it very little, if any, information concerning the Demand Futility Plaintiffs, *e.g.*, when Olin and/or Smith purchased their Under Armour stock, which is inexplicably missing from both of their complaints (*see Olin* Action, ECF 1, ¶26 (stating only that Olin "has been continuously throughout all times relevant hereto" a stockholder of Under Armour stock); *Smith* Action, ¶67 (alleging only that Smith has "continuously been a stockholder of Under Armour at all relevant times herein"); whether Olin and/or Smith sold portions or all of their Under Armour Stock at any point in time; the reason(s) for their prosecution of their claims and their interest in vindicating the Company's rights; and why Olin and/or Smith did not, as plaintiffs Paul and Viskovich did, seek appointment as lead plaintiffs of the consolidated action.

[20]    Further underscoring Plaintiff Olin's comparative ***lack*** of dedication to this action is the fact that when faced with Defendants' motion to dismiss his then-pending claims in the *Olin* State Court Action (ECF 39-4), rather than respond in opposition to that motion, Olin voluntarily

Finally, that both plaintiffs Paul and Viskovich have garnered the collective support of three additional Under Armour shareholders who also served litigation demands—the Demand Shareholders—and who therefore have an interest in the outcome of this litigation, confirms not only their desire to lead this litigation, but their undisputed ability to do so.  *See* ECF 51-1 at 2, n.3.  Indeed, the Demand Shareholders have tentatively forgone filing their own separate actions in favor of joining plaintiffs Paul and Viskovich in the prosecution of this action.  *Id.*  By contrast, Demand Futility Plaintiffs do not enjoy the support of ***any*** other derivative plaintiff or shareholder with an interest in this litigation, nor do their counsel.

Thus, plaintiffs Paul and Viskovich, with the aid of Johnson Fistel and GPM and the full support of the Demand Shareholders and their counsel, are best suited to pursue the claims on behalf of all derivative plaintiffs.

## III.  The Demand Futility Plaintiffs' Cases Are Subject to Unique Defenses

Demand Futility Plaintiffs' proposal should not be adopted by this Court for the additional, independent reason that it fails to address how to overcome specific defenses that are unique to the Demand Futility Plaintiffs' cases.

As a threshold matter, both Demand Futility Plaintiffs lack the standing necessary to pursue claims on behalf of the demanding shareholders, including Paul, Viskovich, and the other Demand Shareholders.  Indeed, given that Demand Futility Plaintiffs made no demand on the Board themselves, they are legally incapable of pursuing any claims arising from the demands, including alleging that the demands were wrongfully refused.

---

dismissed his case on April 1, 2020 (ECF 39-5) and re-filed in this Court on September 1, 2020 (*Olin* Action, ECF 1).  Plaintiff Olin's reluctance to vigorously defend his claims then strongly suggests that he will not defend them so now.

In particular, Olin's demand futility theory is based on the Board's refusal of plaintiff Paul's litigation demand—*i.e.*, that demand would have been futile as evidenced by the Board's refusal of Pauls' demand.  But this theory of demand futility—that refusal of another shareholder's demand evidences futility—has been squarely addressed and rejected under Maryland law.  *See Kautz v. Sugarman*, 456 Fed. App'x 16, 19 (2d Cir. 2011) (under Maryland law, demand by one of two named plaintiffs precluded the other plaintiff from alleging demand futility); *see also* ECF 51-1 at 8.  Further, Olin's willingness to forcefully defend his claims (or anyone else's claims, for that matter) is called into question given that after first filing in Maryland state court, Olin voluntarily dismissed his case in that forum rather than challenge Defendants' motion to dismiss in that Court, choosing to then refile substantially the same action in this Court.  ECF 51-1 at 13–14.  This blatant forum shopping should not now be rewarded with a leadership position for his counsel.

As for Smith, her demand futility theory faces a similar fate.  Smith alleges demand would have been futile based on the fact that the Board was beholden to the Company's founder and CEO, defendant Plank.  But this theory, too, has already been considered and rejected, specifically by Judge Russell of the Maryland District Court in a previous derivative action captioned *In re Under Armour, Inc. S'holder Deriv. Litig.*, 2020 WL 1505575, at *10 (D. Md. Mar. 30, 2020).  Moreover, Smith offers no basis whatsoever to suggest that her claim will somehow not be subject to the same outcome.

By contrast, Paul and Viskovich's wrongful refusal claims are subject to no unique defenses that would make them unsuitable lead plaintiffs or render their counsel unsuitable for leadership positions in this action.  Olin and Smith cannot point to any such defect.

Thus, the fact that Olin's and Smith's claims are subject to unique defenses (and Paul and Viskovich's claims are not) renders Demand Futility Plaintiffs and their counsel ill-suited to lead this action.[21]

## CONCLUSION

For the foregoing reasons, plaintiffs Paul and Viskovich respectfully request that the Court deny the Demand Futility Leadership Motion in its entirety, and instead adopt plaintiffs Paul and Viskovich's superior leadership proposal outlined in the Demand Made Leadership Motion.

DATED: March 12, 2021                            Respectfully submitted,

                                                 **GLANCY PRONGAY & MURRAY LLP**

                                                  /s/ Benjamin I. Sachs-Michaels
                                                 Benjamin I. Sachs-Michaels
                                                 (admitted pro hac vice)
                                                 Matthew M. Houston
                                                 712 Fifth Avenue, 31st Floor
                                                 New York, NY 10019
                                                 Telephone: (212) 935-7400
                                                 mhouston@glancylaw.com
                                                 bsachsmichaels@glancylaw.com

                                                 Robert V. Prongay
                                                 Pavithra Rajesh
                                                 1925 Century Park East, Suite 2100
                                                 Los Angeles, CA 90067
                                                 Telephone: (310) 201-9150
                                                 rprongay@glancylaw.com
                                                 prajesh@glancylaw.com

---

[21]     For a more robust discussion of the unique defenses to which the Demand Futility Plaintiffs' cases are subject, plaintiffs Paul and Viskovich respectfully refer the Court to the memorandum submitted in support of the Demand Made Leadership Motion, which plaintiffs Paul and Viskovich incorporate by reference as is fully set forth herein.  *See* ECF 51-1 at 13–14.

**JOHNSON FISTEL, LLP**
Michael I. Fistel, Jr. (admitted pro hac vice)
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
michaelf@johnsonfistel.com

*[Proposed] Co-Lead Counsel for Plaintiffs*

**BROWN GOLDSTEIN LEVY, LLP**
Joseph B. Espo, Federal Bar No. 07490
Dana W. McKee, Federal Bar No. 04447
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Telephone: (410) 962-1030
Facsimile: (410) 385-0869
jbe@browngold.com
dwm@browngold.com

**ADELBERG,   RUDOW,   DORF   &
HENDLER LLC**
Andrew Radding, Bar No. 00195
7 Saint Paul Street, Suite 600
Baltimore, MD 21202
Telephone: (410) 986-0824
aradding@adelberg.com

*[Proposed] Co-Liaison Counsel for Plaintiffs*

**KIRBY MCINERNEY LLP**
Ira M. Press
Thomas W. Elrod
Andrew M. McNeela
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com
amcneela@kmllp.com

*[Proposed] Executive Committee Member*

19

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system on March 12, 2021

DATED: March 12, 2021                              /s/ Benjamin I. Sachs-Michaels
                                                   Benjamin I. Sachs-Michaels (*pro hac vice*)
                                                   **GLANCY PRONGAY & MURRAY LLP**